[S.F. No. 22623.    In Bank.    Oct. 21, 1969.]

BIG BOY LIQUORS, LTD., Petitioner, v. ALCOHOLIC
   BEVERAGE CONTROL APPEALS BOARD, Respond-
   ent; EDWARD J. KIRBY, as Director, etc., Real Party
   in Interest.

Robert Edmondson and Howard Engelskirchen for Petitioner.

Thomas C. Lynch, Attorney General, and L. Stephen Porter, Deputy Attorney General, for Respondent and for Real Party in Interest.

MOSK, J.—We here review a decision of the Alcoholic Beverage Control Appeals Board (board) which affirmed a decision of the Department of Alcoholic Beverage Control (department) suspending the retail off-sale general liquor license of Big Boy Liquors, Ltd. (licensee). (See Bus. & Prof. Code, § 23090 et seq.)[1]

On February 23, 1967, the department filed an accusation in two counts against the licensee doing business as Big Boy Liquors, 731 Columbus Avenue, San Francisco. The first count charged the licensee with selling to an investigator of the department on or about January 18, 1967, two four-fifth quart bottles of a brand name bourbon whiskey at a retail price less than that provided for in the minimum retail price schedule filed with the department. The second count charged the licensee in exactly the same terms as count I except that the violation was alleged to have occurred on or about January 20, 1967.

The acts set forth in both counts were charged as providing grounds for suspension or revocation of the licensee's license under article XX, section 22, of the California Constitution and section 24200, subdivision (a), of the Business and Pro-

---

[1] Hereafter, unless otherwise indicated, all section references are to the Business and Professions Code.

fessions Code. Additional grounds for suspension or revocation of the license were charged to exist under section 24200, subdivision (b), in that because of the sales set forth in counts I and II the licensee had violated or permitted the violation of section 24755 and department rule 99(a) (Cal. Admin. Code, tit. 4, § 99(a)).

In response to the department's accusation, the licensee filed a notice of defense pursuant to Government Code section 11506 in which it requested to be heard relative to the violations alleged in the accusation. On June 5, 1967, a hearing was conducted by a hearing officer of the Office of Administrative Procedure. On August 17, 1967, the hearing officer issued his proposed decision in which he found in terms of the accusation that the allegations of both counts were true, and recommended that the licensee's license be suspended for 15 days on each count, the periods of suspension to run consecutively. The department adopted the proposed decision in its entirety. The licensee appealed to the board, which affirmed the department's decision on both counts. We thereafter issued a writ of review.

The licensee seeks to have the decision of the board vacated and the decision of the department reversed on the grounds (1) that section 24755 is invalid in that it violates the Fourteenth Amendment to the United States Constitution and the antitrust laws of the United States and of the State of California; (2) that the suspension of the licensee's license is not supported by substantial evidence in that the actual bottles allegedly purchased from the licensee were not introduced into evidence and the department failed to prove publication in accordance with the provisions of section 24755, subdivision (b); and (3) that the department does not have the power to suspend a license for sales below the prices specified in the minimum retail price schedule filed with the department in light of section 24755.1, which section purports to prevent the sanctions of suspension or revocation for such sales.

Section 24755 provides for the filing of a minimum retail price schedule for distilled spirits which are to be sold at retail for consumption off the licensed premises. At the time of the sales here involved, the statute required that the schedule be filed with the department and be published prior to its effective date. Once the schedule becomes effective no off-sale licensee is permitted to sell any package of distilled spirits for less than the price specified in such schedule. Section

24755.1, effective on September 17, 1965, provides that if any licensee sells distilled spirits for less than the effective filed price the penalties to be imposed therefor by the department are limited to monetary fines, and the department is prohibited from suspending or revoking the violating licensee's license.

The licensee asserts that the minimum retail price maintenance provisions of the Alcoholic Beverage Control Act (act) are invalid under the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States and under the antitrust laws of the United States and the State of California. In *Samson Market Co. v. Alcoholic Bev. etc. Appeals Bd.*, ante, p. 1215 [81 Cal.Rptr. 251, 459 P.2d 667], we clearly indicated that the 1961 revisions of the retail price maintenance provisions substituting a unilateral minimum retail price schedule for a negotiated fair trade contract amounted to a change in form only and not in substance and did not compel us to modify our previous holdings that the retail price maintenance provisions were constitutional. (See *Samson Market Co. v. Alcoholic Bev. etc. Appeals Bd.*, ante, at pp. 1218-1221; *Wilke & Holzheiser, Inc. v. Department of Alcoholic Beverage Control* (1966) 65 Cal.2d 349 [55 Cal.Rptr. 23, 420 P.2d 735] ; *Allied Properties v. Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 141 [346 P.2d 737].) The licensee's contentions that the pricing statutes violate the due process and equal protection clauses of the Fourteenth Amendment are presented without supporting argument or citation of authority. (See *Samson Market Co. v. Alcoholic Bev. etc. Appeals Bd.*, ante, at p. 1221, fn. 4.)

The licensee asserts that the order of suspension is not supported by substantial evidence for two reasons. First, it argues that because there was a conflict in the evidence as to what size bottles were purchased by the department's investigator, Etter, it was the department's duty to introduce into evidence the actual bottles purchased as the best evidence of the accused violations. In this respect the licensee also asserts the board erred in failing to consider Evidence Code sections 412 and 413[2] when passing on the weight of the evidence.

---

[2]Evidence Code section 412 provides: "If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust."

Evidence Code section 413 provides: "In determining what inferences

The evidence introduced at the hearing before the department consisted in part of the testimony of Etter. He stated unequivocally on direct examination that he purchased four-fifth quart bottles of whiskey from the licensee on two different occasions and his official report to the department, which was introduced into evidence, verified the size of the bottles as being four-fifth quarts. On cross-examination by the licensee, Etter's notes, which he made immediately after he purchased the whiskey from the licensee, were introduced into evidence. They showed that he had purchased quart bottles from the licensee and not four-fifth quarts as he had stated on direct examination. When confronted with this inconsistency, Etter stated that the quart notation was a mistake and that he was certain that he had purchased four-fifth quart bottles.

■ Technical rules of evidence do not apply to administrative hearings. Government Code section 11513, subdivision (c), provides that "Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs . . . ." Thus neither the trier of fact nor the board was required to weigh the evidence in accordance with the provisions of sections 412 and 413 of the Evidence Code. ■ At most there is a conflict in the evidence and we are required to resolve all conflicts in the evidence in favor of the department's decision. (*DeMartini* v. *Department of Alcoholic Beverage Control* (1963) 215 Cal.App.2d 787, 799 [30 Cal.Rptr. 668].) There is thus substantial evidence to support the finding that the bottles sold to Etter were four-fifth quarts.

■ The licensee's second reason for claiming a lack of substantial evidence to support the department's findings is that there was no proof that the minimum retail price schedule was published in accordance with the former provision of section 24755, subdivision (b), that such schedule be published "prior to the effective date thereof."[3] The licensee further asserts that in order to prove publication in a trade journal of general circulation there must be introduced

to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's failure to explain or to deny by his testimony such evidence or facts in the case against him, or his willful suppression of evidence relating thereto, if such be the case.''

[3]Section 24755, subdivision (b), provided in part: ''Any person filing such schedule shall cause such schedule to be published in a manner which will result in each retailer affected by such schedule being advised of the

into evidence, at the very least, an affidavit of mailing of the journal stating the date on which it was mailed.

Evidence relating to publication consisted of the testimony of LeRoy Page, a publisher of the Beverage Industry News (News). He testified that on the first day of every month the News published a price book which was sent to every distilled spirits licensee in the northern California trading area; that the prices contained in the book corresponded to those contained in the minimum retail price schedules which were filed with the department; that the News obtained its prices from the brand owners who filed them with the department; that the licensee was on the January 1967 mailing list of the News and that the News had not received any notice from the post office that the licensee was not receiving its issues. In addition, two pages from the January 1967 issue of the News price book were introduced into evidence showing the minimum retail price of four-fifth quarts of the brand whiskey involved in the accusation. Also introduced was a certified copy of the minimum retail price schedule for the whiskey filed with the department on June 15, 1966, which showed its effective date to be August 1, 1966.[4] No proof whatsoever was introduced as to publication of prices for the whiskey prior to the August 1, 1966, effective date of the price schedule.

The contention made by the licensee is identical in substance with the contention which was made by the licensee in *Samson Market Co.* v. *Alcoholic Bev. etc. Appeals Bd., ante,* at p. 1215. We there pointed out that the department is vested with the power and duty to enforce and administer the act and in so doing is charged with the duty of enforcing the minimum retail price maintenance provisions. (*Ante,* at p. 1223.) When the department certified that the minimum retail price schedule for the whiskey was the schedule required by law to be filed with the department and that it was

contents of such schedule prior to the effective date thereof.'' This provision was deleted by Statutes 1967, chapter 1450, page 3384.

Department rule 99(k) (Cal. Admin. Code, tit. 4, § 99(k)) provided that publication could be in a trade journal of general circulation in the trading area affected. We upheld rule 99(k) as a valid interpretation of the provisions of section 24755, subdivision (b), set out above in *Kirby* v. *Alcoholic Bev. etc. Appeals Bd., ante,* at pp. 1201-1202.

[4]The certification made under oath by the acting administrative service officer to the Director of Alcoholic Beverage Control states that such person is the ''legal custodian of the distilled spirits minimum retail price schedules required by law to be filed with the Department . . . .'' It also states that the price schedule so certified was ''effective January 1967.''

effective in January 1967, we must presume that in so certifying, the department had regularly performed its official duty (Evid. Code, § 664) and had ascertained that the price schedule was published in a trade journal of general circulation prior to its effective date as required by the former provisions of section 24755, subdivision (b).[5]

The effect of the presumption of Evidence Code section 664, as we indicated in *Samson Market*, is to shift to the licensee the burden of proving that the department had not regularly performed its official duty in that it did not ascertain whether the price schedule had been properly published so as to become effective. As in *Samson Market*, the licensee in the instant case has failed to introduce any evidence to rebut the presumption, and, in fact, the evidence shows that the licensee's shelves were marked with the proper minimum retail price indicating that it had received notice from some source as to the amount of the effective filed price. Further, Page testified that the licensee had been on the News' mailing list since April 1, 1966, and that the News had never received notice from the post office that the licensee was not receiving its copies. All evidence and inferences thus point to the fact that the price schedule was published in a trade journal of general circulation prior to its effective date, thereby constituting substantial evidence to support the finding that the schedule was effectively filed.

On this state of the evidence the licensee's contention that there must be an affidavit of mailing of the News in order to find that there was a proper publication is rejected as being irrelevant. The application of Evidence Code section 664 leads to the presumed fact that the price schedule was published in a trade journal of general circulation but does not require the conclusion that such journal was the News. As such, the evidence as to publication in the News is irrelevant. We note, however, that an affidavit of mailing does not appear to be indispensable to the proof necessary to sustain a finding of

[5]We reject the argument of the Attorney General that the purpose of the publication provisions is merely to advise retailers of the contents of price schedules and that therefore if the evidence shows a licensee had actual notice of the prices, the department need not prove publication. This argument fails to take cognizance of the former language of section 24755, subdivision (b), which required that "Any person filing such schedule *shall* cause [it] to be published . . . ." (Italics added.) Such mandatory language indicates to us that in order to be effective a price schedule *must* be published and the department must introduce proof of publication to support a finding that a price schedule was effective.

proper publication in a trade journal. As indicated above, Government Code section 11513, subdivision (c), provides that "Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs . . . ." It is not inconceivable that under this liberal rule of admissibility, evidence short of an affidavit of mailing would support a finding of proper publication.

Although the proceedings before the department were otherwise without error, the licensee's final contention requires that we reverse the department's order of suspension.

██ The licensee contends that the department exceeded its power in ordering the suspension of its license because section 24755.1 provides that for a violation of section 24755 the department may not suspend or revoke the license of the violating licensee but may only impose monetary fines. The licensee argues that "a fair reading of Article [XX], Section 22 [of the California Constitution] shows throughout that the section contemplates the exercise of the authority by the Department under the supervisory authority of the Legislature," and therefore the enactment of section 24755.1 by the Legislature did not infringe upon the constitutional power of the department to deny, suspend or revoke licenses. (Cal. Const., art. XX, § 22.)

We held in *Kirby* v. *Alcoholic Bev. etc. Appeals Bd., ante,* at pages 1201-1206, that the prohibition against license suspension in section 24755.1 is constitutional and properly qualifies the power to "license" given to the department by article XX, section 22, of the California Constitution. We therefore must agree with the licensee's assertion that section 24755.1 prevents suspension of its license in the instant case.

From the foregoing, we conclude that the department properly held that the licensee violated the minimum retail price maintenance provisions of section 24755, but improperly ordered suspension of the licensee's license.

The decision of the department is reversed, and the matter is remanded for reconsideration of penalty within the limitations of section 24755.1 of the Business and Professions Code.

Traynor, C. J., McComb, J., Peters, J., and Burke, J., concurred.

SULLIVAN, J.—I concur in part and dissent in part.

I agree that the Department properly held that the licensee violated the minimum retail price maintenance provisions of Business and Professions Code section 24755. But I disagree with the majority's conclusion that the purported prohibition in Business and Professions Code section 24755.1 against license suspension or revocation is constitutional and properly qualified the power conferred upon the Department by article XX, section 22 of the Constitution to license, and to deny, suspend or revoke any specific license. Accordingly, I dissent from the majority's holding that section 24755.1 prevents suspension of the licensee's license in the instant case and that the Department improperly ordered suspension of such license.

For the reasons stated in my concurring and dissenting opinion in *Kirby* v. *Alcoholic Bev. etc. Appeals Bd., ante,* page 1200 [81 Cal.Rptr. 241, 459 P.2d 657], it is my opinion that the prohibition in section 24755.1 against license suspension or revocation is unconstitutional because it limits and impairs the constitutional power to suspend or revoke licenses granted the Department by the second sentence of the fifth paragraph of section 22 of article XX. I further conclude that since the provisions of section 24755.1 are clearly inseverable, the entire section is inoperative. The licensee's argument that the section has vitality here must therefore fall.

I would affirm the decision of the Department.

Tobriner, J., concurred.

Respondent's petition for a rehearing was denied November 19, 1969. Tobriner, J., and Sullivan, J., were of the opinion that the petition should be granted.