[S. F. No. 20398. In Bank. June 23, 1960.]

R. ARTHUR BELLMAN, as Administrator, etc., Appellant, v. COUNTY OF CONTRA COSTA, Respondent.

**364**

R. Arthur Bellman, in pro. per., for Appellant.

Carlson, Collins, Gordon & Bold and Dean S. Ormsby for Respondent.

SCHAUER, J.—In this action in inverse condemnation based on earth slippages plaintiff[1] appeals from a judgment of dismissal after the granting of a motion "for a nonsuit for the insufficiency of plaintiffs' proof." From a memorandum opinion it appears that the motion was granted on the theory that the claim filed by plaintiff with defendant county was not timely under the one-year claim provisions of sections 29702 and 29704 of the Government Code as they read at the times involved. We have concluded that the trial court was correct as to slippages which occurred more than one year prior to the filing of· plaintiff's claim, but that the claim was timely otherwise.

---

[1]Plaintiff appears not in his individual capacity, but as administrator of the estate of Bernard R. Maybeck, deceased, and as executor of the will of Annie White Maybeck, deceased. Mr. and Mrs. Maybeck before their deaths were the owners of the land here involved. The record shows that Mr. Maybeck joined as a plaintiff when this action was filed; apparently his death occurred thereafter and his administrator was substituted. All references to "plaintiff" in this opinion will include Mr. and Mrs. Maybeck and their personal representative, as may be appropriate in context.

Plaintiff owns a hillside tract of land in defendant county bordering upon a county road. During the year 1952 the road was widened by the county by excavating into the hillside to or near plaintiff's frontage, thus removing the lateral and subjacent support for plaintiff's land. It does not, however, appear that plaintiff was put on notice of any actual taking or damaging of his land until on or about March 1, 1954. At that time substantial quantities of earth from plaintiff's property slid onto the widened road, leaving a large hole in the land, and further slippage was continuing to the time of trial in April, 1958.

Plaintiff filed a claim with the county board of supervisors on February 11, 1957, which the board rejected on February 13. This action was filed on March 12, 1957.

In the claim which was filed it is stated that "at all times herein mentioned respondent County . . . has been and is the owner of . . . and . . . does maintain as a public road, an easement along the westerly edge of" plaintiff's property; that claimants did not know the exact dates but that in the summers of 1952 and 1953, "for the purpose of widening and grading said public road" defendants "did excavate below the natural surface of and into said real property and remove dirt . . . without leaving any lateral or any other support for the lands of claimants not included in said easement" and that thereafter plaintiff's property "commenced to and ever since has continued to and does now crack, subside and slip . . . leaving a large depression or hole in claimants' said land." The evidence was that "there is a relatively large area of land that has slid out of what we would designate as the Maybeck property, *and the movement is still* [at time of trial, April, 1958] *in progress.*" (Italics added.)

At the times here involved section 29704 of the Government Code provided that "Any claim against the county . . . payable out of any public fund under the control of the board [of supervisors], whether founded upon contract . . . or upon any act or omission of the county . . . shall be presented to the board before any suit may be brought thereon . . . ," and section 20702 specified that "A claim shall be filed within a year *after the last item accrued.*" (Italics added.)

After hearing plaintiff's evidence the court granted defendant's motion for nonsuit on the ground that plaintiff had failed to comply with the above quoted claims statutes. The court relied on (among other authorities) the holding of this court in *Powers Farms, Inc.* v. *Consolidated Irr. Dist.* (1941), 19

Cal.2d 123, 129 [5] [119 P.2d 717], that a claims statute is applicable to an eminent domain proceeding and that ''Where the time and extent of an injury are uncertain, a statutory period of limitation begins to run when the fact that damage is occurring becomes apparent and discoverable, even though the extent of the damage may still be unknown.''

Plaintiff's first contention on appeal is that under the law as it existed at the times here relevant the filing of a claim with the board of supervisors was not required in actions in inverse condemnation, i.e., for the taking or damaging of private property for public use within the meaning of section 14 of article I of the California Constitution.

In *Wilson* v. *Beville* (1957), 47 Cal.2d 852, 856-862 [5-12] [306 P.2d 789], it was held that a taking by eminent domain, including an action in inverse condemnation, is a matter of statewide concern which may be regulated only by the state Legislature, and is not a municipal affair controllable by city charter (pp. 856-857 [5]); that the Legislature has fully occupied the field of eminent domain (p. 860 [7]); that plaintiff was not required to comply with the claims provisions of the charter of defendant city, as such provisions could not apply to inverse condemnation actions (p. 862 [13]). Specifically this court said (p. 862), ''By wrongfully failing to follow the eminent domain procedure the city forces the property owner to take the initiative. It is still an eminent domain proceeding and *claims are not necessary in such proceedings.*'' (Italics added.) And in *Bacich* v. *Board of Control* (1943), 23 Cal.2d 343 [144 P.2d 818], an action in inverse condemnation against the State of California (p. 346 [2]), based upon impairment of access to plaintiff's property through construction of a public improvement, it was held (pp. 346-349 [4-6]), that former sections 667 and 688 of the Political Code (now found in the Government Code), relating to claims against the state, by their language evidenced a lack of legislative intent that they apply to inverse condemnation cases, and that section 688.1, added to the Political Code in 1941[2] (now found in the Government Code) and expressly providing that claims

[2]Former section 688.1 of the Political Code, as added in 1941: ''Any person who now has or shall hereafter have a claim *against the State* for the taking or damaging of private property for public use within the meaning of Section 14 of Article I of the Constitution of California must present the claim to *the State Board of Control* in accordance with the provisions of Section 667 of this code. . . .'' (Italics added.) Chapter 982 of the Statutes of 1941, by which section 688.1 was added to the Political Code, further provided: ''Sec. 2. Nothing in this act contained shall apply to pending litigation.''

against the state must be filed in such cases, did not apply because expressly made inapplicable to pending actions.

Plaintiff contends that there is likewise evidenced a lack of legislative intent that section 29704 of the Government Code apply to inverse condemnation cases against *counties,* and argues that, if the Legislature intended that it should apply, plain language to that effect could and would have been employed, as was done when former section 688.1 of the Political Code was enacted in 1941 (and when in pertinent part it was reenacted in 1945 as section 16041 of the Government Code, and again reenacted in 1959 as section 641 of the latter code[3]).

Some support is lent to this view as controlling the instant case by the fact that when in 1947 section 29704 of the Government Code, *having to do with claims against counties,* was enacted, although the language of its predecessor section (former section 4075 of the Political Code) requiring the filing of claims based upon "any act or omission of the county" was retained, *the Legislature did not include,* as it had done when section 16041 was enacted in 1945, language expressly requiring claims in cases involving "the taking or damaging of private property for public use." It is suggested on plaintiff's behalf that if the Legislature had intended in 1947 that the one-year provision contained in section 29702 apply to claims based on the constitutionally vested and protected rights flowing directly to the owner from the taking or damaging of private property for public use it would have so specified as it did in the section respecting claims against the state.

However, when in 1947 the Legislature incorporated in section 29704 of the Government Code the pertinent provisions of former section 4075 of the Political Code (requiring claims for "any act or omission" of a *county*), two District Court of Appeal cases (*Veterans' Welfare Board* v. *City of Oakland* (1946), 74 Cal.App.2d 818, 826-830 [5] [169 P.2d 1000]; *Rhoda* v. *County of Alameda* (1933), 134 Cal.App. 726, 734-736 [7, 8] [26 P.2d 691]) holding that section 4075 applied to inverse condemnation cases had already been decided and had presumptively come to the notice of the Legis-

[3]Section 641 of the Government Code, as enacted in 1959: "Any person who has a claim against the State (1) on express contract, (2) for negligence, or (3) *for the taking or damaging of private property for public use within the meaning of Section 14 of Article I of the Constitution,* shall present the claim to the [State] board [of Control] in accordance with Section 621. . . ." (Italics added.) This provision is in the exact language of section 16041, enacted in 1945 but repealed and reenacted in 1959 as section 641.

lature. (See *Cole* v. *Rush* (1955), 45 Cal.2d 345, 355 [8] [289 P.2d 450, 54 A.L.R.2d 1137].)

Moreover, the 1959 session of the Legislature repealed sections 29702 and 29704, but added section 29700 to the Government Code, as follows:

"Except as otherwise provided herein, this chapter [4] applies to all claims for money or damages against counties including claims which are governed by Chapter 2 (commencing with Section 700) of Division 3.5 of Title 1 of this code." And section 703 of chapter 2 (which chapter was likewise enacted in 1959) when read together with sections 700, 710 and 711 thereof appears to require the filing of "all claims for money or damages against local public entities" (including counties), with certain listed exceptions not here pertinent.

Further, defendant also points out, in 14 legislative acts found in the general laws and having to do chiefly with local flood control districts the Legislature originally (prior to 1959) provided expressly for the filing of claims in inverse condemnation matters. However, a check of the 1959 statutes indicates that without exception the provisions of the respective acts so providing were repealed and they were all blanketed under chapter 2 (commencing with § 700) of division 3.5 of title 1 of the Government Code mentioned hereinabove, which chapter would be declared inapplicable to inverse condemnation claims if plaintiff's position were to be upheld on this appeal. We are persuaded that the Legislature intended, by the 1959 amendments, to simplify and clarify the claims procedure, rather than to eliminate it altogether in inverse condemnation situations involving local bodies. This latest expression of the Legislature, therefore, supports the conclusion that it is designed to regulate the time for the filing of claims in inverse condemnation actions against counties as well as against other local bodies. (See *California Emp. Stab. Com.* v. *Payne* (1947), 31 Cal.2d 210, 213-214 [1] [187 P.2d 702]; *Board of Soc. Welfare* v. *County of Los Angeles* (1945), 27 Cal.2d 90, 97 [3] [162 P.2d 635].)

We point out that *Wilson* v. *Beville* (1957), *supra*, 47 Cal.2d 852, dealt with and discussed a local city charter claims provision, as distinguished from a state legislative enactment, and expressly recognized (pp. 856-860 [5-7]) that the matter was one for the state Legislature to regulate. (See also *Bacich* v. *Board of Control* (1943), *supra*, 23 Cal.2d 343, to the effect that a claims statute enacted by the Legislature is and would

be valid.) We hold that the claims statute here involved applies in this inverse condemnation action.

The question remains as to the timeliness of the claim which plaintiff filed. As already noted, the statute (former Gov. Code, § 29702) required filing within a year "after the last item accrued."

 In the circumstances here alleged, a cause of action for destruction of the lateral support emanates not from the excavation standing alone, but from the subsidence. (*Veterans' Welfare Bd.* v. *City of Oakland* (1946), *supra,* 74 Cal. App.2d 818, 831 [6b]; see also *Marks* v. *City of Seattle* (1915), 88 Wash. 61 [152 P. 706, 708-709 [1, 2]].) Further, the rule is that a new and separate cause of action arises with each new subsidence, with any applicable limitations statute running separately for each separate subsidence. (See 5 Powell on Real Property, § 699, p. 289; 5 Rest., Torts, § 817, p. 193; 1 Am.Jur. 525-526, § 34; 3 Sedgwick, Damages (9th ed.), § 925, p. 1904; *Easter* v. *Dundalk Holding Co.* (1952), 199 Md. 324 [86 A.2d 477, 479 [1, 2]].) Therefore, the fairest and most workable rule with respect to the filing of claims and as to the items of damage for which recovery may be had once a claim has been filed appears to be that which governs in the pension cases, viz., plaintiff may recover on those items of damage which accrued within the applicable time period (here, one year) prior to the date of filing of the required claim and also, without the necessity of filing successive claims, on such items as accrue after that date. (See *Abbott* v. *City of Los Angeles* (1958), 50 Cal.2d 438, 464-465 [30] [326 P.2d 484], and cases there cited.) Commendably, fair-minded counsel for defendant in the present case agrees that this is a rule conducive to justice. It may also be noted that *Powers Farms, Inc.* v. *Consolidated Irr. Dist.* (1941), *supra,* 19 Cal.2d 123, 129 [5], dealt with a situation where the *extent* of the damage remained unknown at the time the fact that the damage was occurring became apparent and discoverable, rather than, as in the present case, with a taking and damaging which was assertedly continuing to the time of trial; that case therefore is not controlling here.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.