[Civ. No. 66035. Second Dist., Div. Two. Mar. 18, 1983.]

ROBERT RICHARD DILLASHAW, a Minor, etc.,
Plaintiff and Appellant, v.
AYERST LABORATORIES, INC., Defendant and Respondent.

COUNSEL

Girardi, Keese & Crane and John R. Swaney for Plaintiff and Appellant.

Morgan, Wenzel & McNicholas and Walter M. Yoka for Defendant and Respondent.

OPINION

**COMPTON, J.**—Plaintiff Robert Richard Dillashaw, a minor, by and through his guardian ad litem, instituted an action against Ayerst Laboratories, Inc., (Ayerst) for personal injury from a defective product.

In essence the complaint alleged that plaintiff's mother had, during her pregnancy, taken the drug Mysoline which is manufactured by Ayerst and that the drug produced birth defects in the plaintiff.

Plaintiff was born October 1, 1971. Civil Code section 29 provides in part: ". . . any action by or on behalf of a minor for personal injuries sustained prior to or in the course of his birth must be brought within six years from the date of the birth of the minor, . . ." Thus in the ordinary course of events the action in this case would have been barred on October 1, 1977.

■ The bar of the limitation period is, however, subject to the ameliorating rule that the period does not run against an individual who is ignorant of the existence of a cause of action and only begins to run when the existence of the cause of action is discovered or, in the exercise of reasonable diligence, should have been discovered. (*Segura* v. *Brundage* (1979) 91 Cal.App.3d 19, 25 [153 Cal.Rptr. 777], citing *Myers* v. *Stevenson* (1954) 125 Cal.App.2d 399, 402 [270 P.2d 885].)

In the case at bench the complaint was filed September 27, 1979, some *eight years* after the birth of plaintiff. It did, however, contain the necessary allegations that discovery of the existence of the cause of action did not occur until sometime in the year 1975. Thus the complaint was not assailable by demurrer on the issue of the statute of limitations.

■ Ayerst moved for summary judgment and presented evidence that plaintiff in fact had discovered the existence of the cause of action in August of 1973. The trial court granted the motion and plaintiff has appealed.

Plaintiff challenges the ruling by contending that (1) a triable issue of fact exists as to whether the statutory limitation of Civil Code section 29 was tolled by delayed discovery, and (2) public policy warrants the extension of the eight year statute of limitations found in Code of Civil Procedure section 340.5 to a product liability action against a drug manufacturer.

■ A motion for summary judgment is properly granted where there is no triable issue as to any material fact and where the moving party is entitled to judgment as a matter of law (Code Civ. Proc., § 437c, subd. (c)). Any doubts as to the propriety of granting such a motion should be resolved in favor of the party opposing the motion. (*People* ex rel. *Riles* v. *Windsor University* (1977) 71 Cal.App.3d 326, 331 [139 Cal.Rptr. 378].) ■ We conclude, however, that the trial court's ruling in the instant case was correct and therefore we affirm the judgment.

The evidence presented to the trial judge in support of the motion for summary judgment revealed that on August 8, 1973, plaintiff filed a complaint against defendant Ayerst and in February 1975, a first amended complaint was filed. On June 19, 1978, the parties stipulated to an extension of time in which to bring the matter to trial to July 12, 1979. On July 20, 1979, plaintiff filed a request for dismissal as to defendant Ayerst. Although the dismissal was "without prejudice," the period of time within which to prosecute the action had expired, and plaintiff was left with little choice but to dismiss the complaint.

■ ■■ ■ ■ Plaintiff's counsel presented no declarations nor evidence in opposition to the motion for summary judgment.[1] Instead he fashioned an argument drawing on the allegations contained in the complaint to the effect that notwithstanding the filing of the prior action, the earliest he could have known of any possible link between Mysoline and birth defects was 1975, when the Physician's Desk Reference (PDR), a guide to prescription medications commonly used by the medical profession, published for the first time the following warning in relation to Mysoline: "Recent reports strongly suggest an association between the use of anticonvulsant drugs by women with epilepsy and an elevated incidence of birth defects in children born to these women. Reference has been made to primidone [Mysoline] in several cases in which it was used *in combination* with other anticonvulsants; but its teratogenicity has not been conclusively demonstrated." (Italics in original.)

Plaintiff reasons that since his 1979 complaint was filed within six years of the publication of this warning, he may escape the running of the statute of limitations. This argument appears to assume that the notation in the PDR was born full blown on the date it appeared and ignores the obvious fact that considerable research over a period of years must have preceded the notation. The fact that the notation was first published in the PDR in 1975, does not mean that no evidence concerning this matter was available prior to that date and could not have been discovered by the exercise of reasonable diligence.

More importantly, however, the argument confuses "discovery" of the existence of a cause of action as envisioned by the law relating to the time in which a complaint must be filed with the ability to marshal evidence to prove the plaintiff's case after a complaint has been filed.

---

[1]In opposing a motion for summary judgment, a party is required to show, by affidavit or declaration, facts sufficient to establish a triable issue of a material fact. (Code Civ. Proc., § 437c, subd. (c).) "The opponent cannot rely upon the allegations of his pleading but must, apart from such pleading, show by his affidavits he has sufficient proof of the matters alleged to raise an issuable question of fact in regard thereto." (*Hayward Union etc. School Dist.* v. *Madrid* (1965) 234 Cal.App.2d 100, 120 [44 Cal.Rptr. 268].)

■ In medical malpractice actions it has long been settled that the limitations period does not commence until the plaintiff either (1) actually discovers his injury and its negligent cause, or (2) could have discovered injury and cause through the exercise of reasonable diligence. (*Huysman* v. *Kirsch* (1936) 6 Cal.2d 302, 312 [57 P.2d 908]; *Stafford* v. *Shultz* (1954) 42 Cal.2d 767, 776 [270 P.2d 1]; *Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 885 [112 Cal.Rptr. 540, 519 P.2d 588].) In *Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 101 [132 Cal.Rptr. 657, 553 P.2d 1129], our Supreme Court made clear that "[p]ossession of 'presumptive' as well as 'actual' knowledge will commence the running of the statute." The high court went on to explain the underlying principle as follows: " '[W]hen the plaintiff has notice or information of circumstances to put a reasonable person *on inquiry,* or *has the opportunity to obtain knowledge* from sources open to his investigation . . . the statute commences to run.' " (*Id.,* at p. 101; italics in original.) (See also *Jones* v. *Queen of the Valley Hospital* (1979) 90 Cal.App.3d 700, 702 [153 Cal.Rptr. 662].)

■ It would defy logic to state that a plaintiff who files a complaint against a named defendant and alleges the elements of a cause of action of defective product liability against that named defendant, had not yet "discovered" that he had a possible cause of action simply because after the lapse of five years he fails to develop the evidence necessary to establish his case. Yet that is exactly what plaintiff asks us to do here.

The various statutes of limitations and their ancillary rules all deal with the time in which a cause of action must be commenced by the filing of a complaint. Once that complaint is filed, however, a different set of time limitations come into play.

Code of Civil Procedure section 583 requires that a case be brought to trial in a diligent fashion and in no event, subject to certain limited exceptions, later than five years from the date of the filing of the complaint. (Code Civ. Proc., § 583, subd. (b).) Code of Civil Procedure section 581a requires service and return of summons within three years from the date of the filing of the complaint. ■ The failure to discover facts or evidence is no excuse for failure to meet the requirements of either section 583, subd. (b) or section 581a.[2]

The filing of the first complaint in August 1973, demonstrates that counsel for plaintiff knew and recognized the nature of the cause of action against defendant just two years after plaintiff's birth. It is beyond dispute that there are no facts supporting any claim of delayed discovery, including any misrepresentation or concealment of facts by Ayerst.

---

[2]Code of Civil Procedure section 581a was amended by the Legislature in the 1981-1982 Regular Session to add subdivision (f)(2), which provides in part: ". . . However, failure to discover relevant facts or evidence shall not excuse compliance."

Once the original lawsuit was filed in August 1973, plaintiff's counsel had a duty to diligently move the case to trial. We have searched the record and found no indication whatsoever that counsel pursued the various avenues of discovery available to him. Interrogatories were not propounded, admissions were not sought, and depositions were not taken.

Although plaintiff's counsel contends that he conducted a considerable investigation during the pendency of the first action, between 1973 and 1978, attempting to find a link between the drug and birth defects, this contention is not borne out by the record.

Although counsel contended that he was in constant communication with the Food and Drug Administration between 1973 and 1978, a sworn affidavit from that department's custodian of records indicates that not one letter of inquiry was received. Counsel also alleged that after conducting his five year investigation he informed plaintiff's parents and guardian ad litem that, as of 1978, there was no causal connection between Mysoline and the birth defects. In 1975, however, when counsel sought to amend the original complaint, he declared: "As a result of further investigation and research, plaintiff is now informed and believes that: (1) the drug Mysoline was negligently and carelessly manufactured, compounded, tested, processed, inspected, packaged, stored, distributed, sold and prescribed by defendants . . . (2) that the defendants . . . knew, or should have known, that Mysoline and other drug products were inherently dangerous, defective and hazardous for the purposes of human consumption. . . ."

Apparently, between 1975 and 1978, plaintiff's counsel lost faith in this claim and told plaintiff's parents that the complaint should be dismissed. Only two months later, however, the validity of those claims were reasserted when a new complaint was filed. Nowhere in the record does counsel attempt to explain what occurred during those two months that renewed his faith in the original allegations, nor why he failed to conduct any discovery between 1973 and 1975, nor why the 1975 notation in the PDR apparently went unnoticed until 1979.

■ As to plaintiff's request that this court extend the application of Code of Civil Procedure section 340.5[3] providing an eight year statute of limitations, we

---

[3]Code of Civil Procedure section 340.5 provides in pertinent part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. . . . Actions by a minor shall be commenced within three years from the date of the alleged wrongful act except that actions by a minor under the full age of six years shall be commenced within three years or prior to his eighth birthday whichever provides a longer period. . . . [¶] For the purposes of this section: (1) 'Health care provider'

note the clear and unambiguous language of that statute which makes it inapplicable to a manufacturer of drugs, such as defendant herein.

Accordingly, we must reject plaintiff's invitation to apply that statute to the facts of the instant case.

The judgment is affirmed.

Roth, P. J., and Gates, J., concurred.

---

means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. 'Health care provider' includes the legal representatives of a health care provider; . . ."